## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

LISA B.,

Plaintiff,

v.                                                             3:21-CV-702
                                                              (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

KENNETH HILLER, ESQ., for Plaintiff
JAMES J. NAGELBERG, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 3, 4).

## I.   PROCEDURAL HISTORY

On January 18, 2018, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning January 30, 2017. (Administrative Transcript ("T") 256-57).  She subsequently amended the alleged onset date to June 8, 2017. (T. 28).  Plaintiff's application was denied initially on April 30, 2018. (T. 69-80, 109-113).  Administrative Law Judge ("ALJ") Bruce S. Fein granted plaintiff's request for a hearing and heard plaintiff's testimony on May 14, 2019. (T. 25-56).  On June 21, 2019, the ALJ issued an order denying plaintiff's claim. (T. 81-

95).

On July 1, 2020, the Appeals Council granted Plaintiff's request for review and remanded plaintiff's claim for further proceedings before the same ALJ. (T. 96-101). The ALJ held a supplemental hearing on December 1, 2020 to hear additional testimony from plaintiff and vocational expert ("VE") Dale Pasculli. (T. 57-68).  On December 21, 2020, the ALJ issued another order denying plaintiff's claim. (T. 7-26). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 19, 2021. (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at

3

448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was fifty-three years old on the date of the administrative hearing. (T. 29, 250).  She is a high school graduate who also attended college for one year. (T. 29, 300).  Her prior employment included work as a stocker and customer service representative at a grocery store, materials handler at a fork lift manufacturer, and a packager at a pet food production facility. (T. 30-34, 330-337).  Plaintiff testified that several of these positions required her to regularly lift up to fifty pounds. (T. 31-32).

Plaintiff has a history of back pain and hip pain, and underwent hip replacement

surgery in 2018 after weight loss, physical therapy and cortisone injections were unsuccessful in reducing her pain. (T. 391-395, 640-41). She reported increased function following the surgery, but her attempts to return to modified duty at her prior employment were unsuccessful. (T. 35-37, 439-440, 660, 757). Plaintiff testified that she still experienced pain in her mid and lower back that radiated down her leg and was aggravated by prolonged sitting and standing in one position or physical activity such as climbing stairs, bending, and twisting. (T. 39-43). She had been walking without a cane following her recovery from surgery, but recently began to use the cane again following a series of falls. (T. 38).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 13-17). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECEMBER 21, 2020 DECISION

After reviewing the procedural history of plaintiff's application and stating the applicable law, the ALJ found that plaintiff met the insured status requirements through December 31, 2022, and had not engaged in SGA since the amended alleged onset date of June 8, 2017. (T. 12-13, 28). At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: "lumbar spine degenerative disc disease and status-post total left hip replacement." (T. 13). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (*Id.*)

At step four, the ALJ found that plaintiff had the RFC to perform less than the

full range of light work, as defined in 20 C.F.R. §§ 404.1567(b). (T. 17-28).
Specifically, he found that plaintiff could only "occasionally climb ramps and/or stairs,
balance, stoop, kneel, crouch and crawl; and never climb ropes, ladders and/or
scaffolds." (T. 13-17).  She also found plaintiff required the option to alternate sitting
or standing positions at thirty minute intervals throughout the day, and should avoid
concentrated exposure to unprotected heights and hazardous machinery. (T. 13).

In making the RFC determination, the ALJ stated that he considered all of
plaintiff's symptoms, and the extent to which those symptoms could "reasonably be
accepted as consistent with the objective medical evidence and other evidence, based
on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p.
(*Id*.)  The ALJ further stated that he considered opinion evidence and prior
administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c. (*Id*.)  The ALJ
also found that plaintiff's medically determinable impairments could reasonably be
expected to cause her alleged symptoms, but that plaintiff's statements regarding the
intensity, persistence, and limiting effects of those symptoms were not entirely
consistent with the medical evidence and other evidence in the record. (T. 15).

Next, the ALJ evaluated the VE testimony and found that plaintiff was unable to
perform her past relevant work. (T. 17).  Relying on the VE's identification of
representative occupations that an individual with plaintiff's RFC could perform, the
ALJ found that there were other jobs existing in significant numbers in the national
economy that plaintiff could perform. (T. 18-19).  Accordingly, the ALJ determined
that plaintiff was not disabled at any time between the alleged onset date of June 8,
2017 through the date of the ALJ's decision. (T. 19).

## V.   **ISSUES IN CONTENTION**

Plaintiff raises two arguments:

1.   The ALJ erred in his RFC determination by failing to properly evaluate the medical opinion evidence, particularly the opinion of Nurse Practitioner ("NP") Maria Berry. (Plaintiff's Brief ("Pl.'s Br.") at 15-22) (Dkt. No. 7).

2.   The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 22-24).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-15) (Dkt. No. 12).  For the reasons stated below, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.   **RFC/EVALUATING MEDICAL EVIDENCE**

### A.   **Legal Standards**

#### 1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v.*

*Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings,

including SSR 96-2p, have been rescinded.  According to the new regulations, the

Commissioner "will no longer give any specific evidentiary weight to medical opinions;

this includes giving controlling weight to any medical opinion." *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL

168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a),

416.920c(a).  Instead, the Commissioner must consider all medical opinions and

"evaluate their persuasiveness" based on the following five factors: supportability;

consistency; relationship with the claimant; specialization; and "other factors."  20

C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical

sources, deference to specific medical opinions, and assigning "weight" to a medical

opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"

and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at

§§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors

for determining the persuasiveness of medical opinions are consistency and

supportability," which are the "same factors" that formed the foundation of the treating

source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically

required to "explain how [he or she] considered the supportability and consistency

factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With

respect to "supportability," the new regulations provide that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source

are to support his or her medical opinion(s) or prior administrative medical finding(s),

the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.   Summary of Medical Opinion Evidence

In this case, the ALJ considered both treating source and consulting opinions related to plaintiff's physical limitations.  Plaintiff has challenged the ALJ's evaluation of these opinions.  A summary of the opinion evidence and the ALJ's findings are set out below.

### 1.   Dr.  Michael Clarke

Dr. Michael Clarke performed plaintiff's January 2018 hip replacement surgery, and offered his opinion of plaintiff's physical functional limitations following a March 15, 2018 physical examination. (T. 554-556, 736-39).  Dr. Clark found plaintiff to be

doing well approximately six weeks after surgery, with no significant complications. (T. 739). Plaintiff demonstrated a good range of motion, and x-rays of her pelvis and left hip raised no concerns. (*Id.*) In Dr. Clark's opinion, plaintiff could do sedentary work at that time so long as she was allowed to sit and stand at-will. (*Id.*) He also opined that plaintiff could not lift anything over twenty pounds or pull anything over fifty pounds. (*Id.*) Dr. Clark further opined that in approximately six weeks, or approximately May 2018, plaintiff would "probably" be able to engage in "more active employment, including lifting beyond those limits to a maximum of 100 pounds, if that was required." (*Id.*)

Dr. Clarke refined that opinion following a July 26, 2018 examination of plaintiff, that took place approximately six months after her surgery. (T. 730). He described plaintiff as "doing well with the left hip," and experiencing "[n]o significant pain, restrictions or limitations." (T. 731). The orthopedic surgeon stated x-rays of plaintiff's pelvis and left hip "look good" with good range of motion and strength. (*Id.*) In Dr. Clarke's opinion, plaintiff was capable of returning to work "in a capacity that involves lifting over 50 pounds, sitting, squatting, standing, climbing, [and] crawling." (*Id.*)

The ALJ found Dr. Clarke's July 2018 opinion "to be persuasive regarding [plaintiff's] left hip," because "it was supported by his treatment notes and was consistent with other evidence in the record, including the objective medical evidence." (T. 16). The ALJ also noted that Dr. Clarke's specialization as an orthopedic surgeon and his treatment history with plaintiff enhanced the persuasiveness of his opinion. (*Id.*)

11

### 2.   NP Maria Berry

NP Maria Berry treated plaintiff for hip and back pain and related issues since July 21, 2015, seeing her on about a monthly basis. (T. 638, 845).  She prepared an opinion of plaintiff s functional limitations dated April 25, 2019. (T. 845-47).

NP Berry opined that plaintiff was able to walk no more than one city block without rest due to severe pain, and could sit or stand for only ten minutes at a time before needing to change positions. (*Id*.)  She estimated plaintiff would need to "change positions or activity every 10-20 min[utes]" over the course of the workday and thus required a job that permitted shifting positions at will from sitting, standing, or walking. (*Id*.)  NP Berry also estimated that plaintiff would need to take an unscheduled ten to fifteen minute break every half hour to an hour. (T. 846).  She further opined that plaintiff needed to elevate her feet when sitting for extended periods of time, and required a cane while standing or walking due to a history of falls. (*Id.*)

NP Berry opined that plaintiff could occasionally lift up to ten pounds, and could rarely lift twenty pounds. (T. 846).  She opined plaintiff could not turn her head to the left due to neck and back pain, but could occasionally look to the right or look down, and could frequently look up. (*Id*).  She explained that plaintiff could never hold her head in a static position because she needed to move to maintain a good range of motion. (*Id.*)  NP Berry further opined plaintiff could occasionally climb stairs, could rarely twist, and could never stoop, bend, crouch, or climb ladders. (*Id.*)  She also opined that plaintiff could occasionally use her hands to grasp, turn, or twist objects and perform fine manipulations, but was limited to occasional reaching with the left arm

and no reaching with the right arm. (T. 847).

NP Berry also opined that plaintiff's impairments were likely to produce "good days" and "bad days," and cause her to be absent from work more than four days per month. (*Id.*)  In her opinion, plaintiff's impairments would frequently interfere with her attention and concentration. (*Id.*)  NP Berry, who also prescribed plaintiff's anxiety medication, opined that plaintiff had been demonstrating significant depression symptoms due to lingering orthopedic problems. (T. 746, 847).  Despite this increase in psychiatric symptoms, NP Berry still opined plaintiff was capable of performing low stress jobs.[1] (T. 845).

The ALJ found NP Berry's opinion to be unpersuasive, because it was inconsistent with both her treatment notes and the broader medical record. (T. 17).  In addition, the ALJ found NP Berry's opinion to be more restrictive than plaintiff's own description of her abilities, as set out in her hearing testimony. (T. 17, 41-43).

### 3.    Consultative Examiner Dr. Gilbert Jenouri

Dr. Gilbert Jenouri performed a consultative physical examination of plaintiff on April 3, 2018. (T. 687-690).  Prior to the examination, plaintiff reported a history of hip surgery and lingering lower back and hip pain. (T. 687).  During the examination, plaintiff demonstrated a normal gait and the ability to walk on her heels and toes without difficulty. (T. 688).  She used no assistive devices, and did not require any assistance changing for the examination, getting on and off the examination table, or

---

[1] Plaintiff did not claim disability due to mental health impairments in her DIB application, and she has not challenged the ALJ's decision in regards to mental health impairments. (T. 71, 299).

rising from a chair. (*Id.*)

Upon examination, Dr. Jenouri found full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in the cervical spine. (*Id.*)  Plaintiff's lumbosacral spine showed decreased extension, flexion and rotation but her shoulders, elbows, wrists, hands, and knees exhibited full range of motion. (T. 688-89).  Dr. Jenouri did not observe any muscle atrophy, and found intact hand and finger dexterity and full grip strength bilaterally. (T. 689).

Based on his examination, Dr. Jenouri opined that plaintiff had a "mild to moderate" restriction walking and standing for long periods, bending, stair climbing, lifting, and carrying. (*Id.*)  The ALJ found this opinion to be persuasive, because it was supported by the consultative examination report and consistent with other record evidence. (*Id.*)

### 4. State Agency Consultant Dr. A. Periakaruppan

Dr. A. Periakaruppan reviewed plaintiff's then-current medical records and prepared an opinion of plaintiff's functional limitations dated April 30, 2018. (T. 76-78).  This review included Dr. Jenouri's consultative examination report and plaintiff's then-current treatment notes, including those of Dr. Clarke and NP Berry. (T. 71-73, 77).  Based on that review, Dr. Periakaruppan opined that plaintiff could occasionally lift or carry up to twenty pounds and could frequently lift or carry up to ten pounds. (T. 76).  The consultant further opined that plaintiff could stand or walk for a total up to six hours and could sit for the same length of time each workday. (*Id.*)  Dr. Periakaruppan found no limitations with regard to plaintiff's ability to push or pull. (*Id.*)

In Dr. Periakaruppan's opinion, plaintiff could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (*Id.*)  The consultant further opined that plaintiff could occasionally stoop, kneel, crouch, and crawl, but had no limitations with regard to balance. (T. 76-77).  Based on the available records, Dr. Periakaruppan opined that plaintiff had no manipulative, visual, communicative, or environmental restrictions. (T. 77).

In a brief narrative summarizing relevant treatment notes, Dr. Periakaruppan opined that plaintiff "retains the ability to perform the full range of light work on a sustained basis." (T. 77).  The ALJ found this opinion to be persuasive, as it was supported by the consultant's explanation of the record evidence and consistent with the broader medical record. (T. 16).

## C.   Application

### 1.   The ALJ Had Substantial Evidence to Find NP Berry's Opinion Unpersuasive.

NP Berry issued the most restrictive medical opinion in the record, and the only medical opinion that the ALJ deemed to be unpersuasive. (T. 17, 845-847).  In the portion of his opinion directly addressing NP Berry's opinion, the ALJ stated:

> In April 2019, Maria Berry, FNP opined that the claimant could lift and/or carry 20 pounds rarely and 10 pounds occasionally, sit 10 minutes at a time, stand 10 minutes at a time, rarely twist, and occasionally look down, turn her head right or left, climb stairs, perform fine manipulations, and grasp, turn, and twist objects; but should never stoop, crouch/squat, climb ladders, or hold her head in a static position. . . . Ms. Berry indicated that the claimant could never reach with her right arm and occasionally reach with her left arm. . . . She opined further that the claimant was capable of low stress jobs; needs a job that permits shifting positions at will from

15

sitting, standing, or walking; would need unscheduled breaks; would likely be absent from work more than four days per month; and frequently experienced pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks . . . . Ms. Berry noted that the claimant needs to change positions or activity every 10 to 20 minutes. . . . Ms. Berry's opinion was not persuasive, as it was not supported by her treatment notes, which documented limited positive clinical findings, and was not consistent with other evidence of record, including the claimant's other treatment notes, the objective medical evidence, and the claimant's activities. Additionally, some of the limitations given by Ms. Berry were more severe than alleged by the claimant in her testimony.

(T. 17).

Plaintiff contends that the ALJ failed to properly consider the supportability and consistency of NP Berry's medical opinion, by dismissing evidence of greater medical restrictions as vaguely described "positive clinical findings," and devoting much of the decision detailing other more benign or "non-abnormal" treatment notes. (Pl. Br. at 17-18). Plaintiff bases her argument on well-developed caselaw providing that a cursory evaluation of medical opinion evidence is grounds for remand. *Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (remanding where ALJ provide one sentence conclusory explanation to reject a treating physician opinion); *see Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) (remanding for the "conclusory nature of the ALJ's reasoning" in determining persuasiveness of opinions). In *Morgan*, the ALJ did not identify any contrary evidence to support his disregard for a restrictive treating source opinion, and failed to recognize that two other opinions and third party MRI reports provided similar findings. *Morgan*, 592 F. App'x at 50. In *Pamela P*., the ALJ never offered an explanation or "point[ed] to other medical

16

evidence," that called the treating source opinion into question.  *Pamela P.*, 2020 WL 2561106, at *6.

No such deficiencies exist in this ALJ's decision, making this case readily distinguishable from *Morgan* and *Paul*.  Here, the ALJ summarized physician-prepared imaging reports dating back to December 2016 that identified plaintiff's hip and spine impairments, documented improvement in both her hip and back pain following hip replacement surgery, and showed stable findings through April 2019 with conservative treatment and no plans for surgical intervention.  (T. 14, 617, 647-48, 672-73, 778-79, 782, 784, 867, 894, 914-15, 926-27).  The ALJ's decision also cited extensively from NP Berry's treatment notes that regularly showed plaintiff in no acute distress, with generally mild pain or tenderness in the back, neck, or hip, a normal gait, and full range of motion in the extremities. (T. 14-15, 412, 429, 772, 776, 814, 817-18).  The ALJ cited similar findings in treatment notes from other providers, including plaintiff's orthopedist, with a documented preference for conservative treatment such as aquatherapy and other forms of physical therapy. (T. 695, 698, 727, 729-30, 734, 736, 925).

The ALJ also found NP Berry's opinion of plaintiff's limitations to be contradicted by plaintiff's hearing testimony. (T. 17).  Plaintiff testified that she could lift up to ten pounds on a repetitive basis, and pick up to fifty pounds on a less regular basis. (T. 41).  She estimated that she could stand for up to thirty minutes at one time and could sit for up to forty-five minutes at one time. (T. 42).  Plaintiff testified that she felt better when she had an opportunity to get up and walk around, although she could

17

only walk for five to fifteen minutes at a time. (T. 42-43). The ALJ found this testimony to be consistent with other evidence of plaintiff's daily activities, all of which suggested greater physical capabilities than those opined by NP Berry. (T. 17).  For example, plaintiff described going on regular walks in an attempt to stay active. (T. 428, 747).  In February 2019, plaintiff explained that she was generally able to walk about 3000 steps per day before feeling discomfort. (T. 721).  The record also shows that plaintiff regularly drove for up to thirty minutes at a time, shopped, and took her parents to medical appointments. (T. 45-46, 743, 751).

The court recognizes that the ALJ did not repeat all of these specific points and citations to the treatment notes in his discussion of NP Berry's opinion, but his rationale for finding the opinion unpersuasive is evident from a reading of the ALJ's entire decision.  *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (". . . the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'") (quoting *Berry*, 675 F.2d at 469); *Darrell D. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1536 (DB), 2022 WL 3578614, at *12 (W.D.N.Y. August 19, 2022) (finding no grounds for remand where ALJ did not repeat facts discussed elsewhere in the decision when evaluating the persuasiveness of a medical opinion).

In support of her argument that the ALJ should have found NP Berry's opinion to be more persuasive, plaintiff has identified references in the record to periods of

increased pain or difficulty due to her physical impairments. (T. 396, 424, 439, 442, 754, 757).  The court notes that some of these notes predate plaintiff's successful hip replacement surgery. (T. 396, 442).  At best, plaintiff's complaints regarding the evaluation of NP Berry's opinion are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's physical impairments.  "In general, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position . . . plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1177, 2022 WL 44700 *6 (W.D.N.Y. Jan. 5, 2022); *see also Veino v. Barnhart*, 312 F.3d 578, (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  In this case, the plaintiff has not made such a showing.

Accordingly, the ALJ's decision demonstrates appropriate consideration of NP Berryhill's opinion in light of her own treatment notes, the longitudinal medical record, and plaintiff's own assessment of her abilities, as reflected in her hearing testimony. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered treating source opinion where the opined limitations were inconsistent with the doctor's own treatment notes and plaintiff's self-reported activities of daily living); *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding no error where ALJ discounted treating source opinion that was inconsistent with treatment notes, other medical opinion evidence, and reported activities).  Most

crucially, and as explained below, the ALJ's RFC determination that plaintiff could perform less than the full range of light work during the relevant period was supported by other substantial evidence, including the three other medical opinions in the record.

### 2. The ALJ's RFC Determination Was Supported by Substantial Evidence.

The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involved sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b) and 416.967(b). Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, the relevant portions which indicate "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday." 1983 WL 31251 at *6. "Frequent" lifting or carrying means occurring from one-third to two thirds of the time. *Id.* As discussed above, the ALJ found that the ALJ could perform nearly the full range of light work, with some accommodation for climbing and certain postural activities. (T. 13).

This RFC determination is consistent with three of the four medical opinions in the record. Dr. Periakaruppan, the non-examining consultant, opined that plaintiff could perform a range of light work that is almost identical to the ALJ's RFC determination. (T. 13, 77). It is well settled that an ALJ may rely on the opinion of a

non-examining state agency consultant in disability claims. *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021) (acknowledging that even under the old regulations, the report of a non-examining state agency medical consultant may constitute substantial evidence under the appropriate circumstances).

Dr. Clarke, who performed plaintiff's January 2018 hip surgery, opined that plaintiff could meet or exceed the lifting requirements of light work, and should achieve even greater function as she continued her post-surgery recovery. (T. 731, 739). The ALJ's RFC determination also includes a sit-stand option similar to that endorsed by Dr. Clarke for the months immediately after surgery. (T. 13, 739).  In incorporating such limitations, the ALJ appropriately factored in the orthopedic surgeon's specialized experience.  *See*, *e.g.*, 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.")

Dr. Jenouri, who performed the April 3, 2018 consultative examination of plaintiff, opined that she had "mild to moderate" limitations with regard to walking, standing, bending, climbing stairs, lifting, and carrying.  (T. 689). Although less specific, such limitations are typically recognized as consistent with an RFC for light work where they are supported by examination results and the broader record.

*Raymonda C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0178 (GTS), 2020 WL 42814, at \*4 (N.D.N.Y. Jan. 3, 2020) ("[A] 'moderate limitation' . . . is essentially equivalent to an ability to perform light work.") (collecting cases); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at \*3 (W.D.N.Y. Mar. 2, 2016) (finding that moderate limitations for "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying" are consistent with an RFC for a full range of light work); *April B. v. Saul*, No. 18-CV-0682, 2019 WL 4736243, at \*5 (N.D.N.Y. Sept. 27, 2019) ("[M]oderate limitations in standing and walking are consistent with light work.") (citations omitted); *Moore v. Comm'r of Soc. Sec.*, No. 16-CV-270, 2017 WL 1323460, at \*8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects . . . [are] consistent with light work.") (citations omitted); *Martinez v. Comm'r of Soc. Sec.*,  No. 13 Civ. 159, 2016 WL 6885181, at \*13 (S.D.N.Y. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016) ("[M]oderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking . . . are consistent with an RFC for light work.").  Given the ALJ's evaluation of the evidence of the functional limitations in both the consultative examination report and the broader medical record, the ALJ could thus rely on Dr. Jenouri's potentially vague language to further support an RFC determination of light work.

In addition to the medical opinion evidence, the ALJ's RFC determination is consistent with and sometimes more restrictive than plaintiff's own testimony regarding her physical limitations. (T. 13, 15-16, 41-43).  Plaintiff testified that she could lift up

to ten pounds on a repetitive basis and up to fifty pounds less regularly, exceeding the requirements of most light work. (T. 41-43). The ALJ also incorporated a broad enough sit-stand option into the RFC determination to accommodate plaintiff's testimony that she could stand for up to thirty minutes at one time, could sit for up to forty-five minutes at one time, and felt better when she had an opportunity to get up and walk around for short periods. (T. 42-43).

Even where plaintiff has identified certain records that were not discussed at length, the ALJ's analysis of the overall treatment record, the medical opinion evidence and plaintiff's own description of her functional limitations allows for meaningful review because this court is able to glean the rationale of the ALJ's decision. *See Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139 (GTS/WBC), 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (holding that "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.") (quoting *LaRock ex rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)). This court thus finds that the ALJ's RFC determination is supported by substantial evidence.

## VII.  STEP FIVE DETERMINATION

### A.  Legal Standards

"A vocational expert or specialist may offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as

23

the claimant actually performed it or as generally performed in the national economy."
*See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  If a claimant is unable to perform a
full range of a particular exertional category of work, or the issue is whether a
claimant's work skills are transferable to other jobs, then the ALJ may also seek VE
testimony regarding the existence of jobs in the national economy and whether a
particular claimant may be able to perform any of those jobs given his or her functional
limitations.  20 C.F.R. §§ 404.1566, 416.966; *Rautio v. Bowen*, 862 F.2d 176, 180 (8th
Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

**B.    Application**

Plaintiff contends that if the ALJ had found NP Berry's opinion to be persuasive,
he would necessarily have reached a more restrictive RFC determination that physically
limited plaintiff to no more than sedentary work. (Pl. Br. at 23-24).  In that case, the
ALJ would have had to find plaintiff disabled pursuant to Medical Vocational
Guidelines, Rule 201.14 in light of her age, education, and work experience.  *See* 20
C.F.R. § 404.1563; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The VE testimony that
plaintiff had no transferable skills from her past relevant work to a sedentary position
supports this view. (T. 66).

Plaintiff's contention regarding step five is relevant only if the ALJ had erred in
his evaluation of NP Berry's opinion and his RFC determination that plaintiff was
capable of performing less than the full range of light work.  Having found that the ALJ
properly evaluated NP Berry's opinion and reached an RFC determination that is

supported by substantial evidence, this court also concludes that the ALJ's hypothetical to the VE based upon that RFC determination was proper. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . .") (citation omitted). Thus, the ALJ could rely on the VE testimony to conclude Plaintiff could perform light work jobs existing in significant numbers in the national economy, and therefore was not disabled. Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supported his determination that plaintiff was not under a disability within the meaning of the SSA.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: October 11, 2022

Andrew T. Baxter
U.S. Magistrate Judge